[L. A. No. 9898. In Bank.—September 28, 1928.]

In the Matter of the Estate of OTHO S. HOUSTON, Deceased. J. M. ROSBOROUGH; Appellant, v. ELIZABETH HOUSTON, Respondent.

Westall & Wallace and Joseph F. Westall for Appellant.

Lucius K. Chase and J. B. Tatlow for Respondent.

PRESTON, J.—Appeal from order settling the accounts of respondent as executrix. Otho S. Houston died May 8, 1917.

He left surviving him four minor children, the oldest of whom was eighteen years of age and the youngest eight years, and his widow, respondent herein, whom he named in his will as the sole beneficiary and executrix of his estate. Proceedings for the probate of his estate were duly instituted and an inventory and appraisement was filed September 25, 1918, valuing said estate at. the sum of $75,806.68. Creditors' claims were presented and allowed in the sum of $28,893.55. Claims of appellant, aggregating $10,304, were presented April 22, 1918, and disallowed on June 29, 1918. On November 7, 1918, appellant brought suit on said claims in the superior court in and for the county of Los Angeles, upon the theory that his recourse in the transaction which gave rise to said claims was *ex contractu*. It was found, however, that a complaint could not be sustained upon that theory and, on March 28, 1919, said suit was abandoned. Thereafter, and on June 29, 1919, the period of ten months for notice to creditors expired and said executrix, both before and after said date, proceeded with the administration of said estate, which was largely involved in indebtedness. The first intimation she had that appellant had not permanently abandoned his claim was on October 10, 1919, when he commenced an action, as a nonresident, in the federal court of that district, in the form of a suit for damages, based upon the same liability that had been asserted by him in the action brought in the state court on said rejected claims. On October 17, 1922, he recovered judgment against said executrix in the sum of $10,060, abstract of which was duly filed in this proceeding on October 27, 1922, in accordance with the provisions of section 1504 of the Code of Civil Procedure, thus establishing it as an allowed claim against said estate. In other words, appellant waited until more than fifteen months had expired after the time for presentation of claims of creditors and until more. than six months had elapsed after dismissal of his suit in the state court, before commencing his action in the federal court, and it was not until three years later that he recovered said judgment upon which this proceeding is predicated. It was stipulated by counsel on April 7, 1926, and the court also found, that this action was an action *ex delicto* and was not based upon any claim filed in said estate by appellant.

During all of the times mentioned there appears to have been a constant effort on the part of respondent executrix to get said estate out of debt, and for this purpose she made various advancements to the estate out of her personal funds, totaling $15,357.32. On July 3, 1919, February 26 and March 28, 1924, she filed accounts which show that prior to July, 1919, that is, several months before the commencement of said suit in the federal court, she had paid claims aggregating $67,742.18. On August 2, 1924, said executrix filed the account now before us for settlement, which is entitled an amended and supplemental account current and report, in lieu of all accounts previously filed. She is charged therein with the total amount of the inventory of said estate, $75,806.68, plus receipts on account of the estate, $4,041.35, and money advanced by her personally, $15,357.32, a total of $95,205.35. She claims credit for disbursements in amount of $81,215.55 and for property remaining in her possession and belonging to the estate of the appraised value of $13,989.80; total, $95,205.35. The court found upon competent evidence that said sum of $15,357.32 was advanced to said estate and passed through the hands of said executrix in payment of estate debts and administration expenses, no repayment of which had been made, and that amount is set forth as a preferred claim against the estate, as is also the claim of said executrix for the accrued amount of her family allowance, $21,500, from May 8, 1917, to July 8, 1924, less $434 paid on account thereof. Thus it is seen that as the assets of the estate are valued only at the sum of $13,989.80, if either of said preferred claims is allowed, and the account is approved, there will be no funds from which to satisfy the claim of appellant.

Appellant attacks the account on numerous grounds. He claims that it is defective, insufficient, incomplete, inconsistent, contradictory, and on its face untrue. He complains of numerous alleged irregularities and makes specific attack against many individual items which we are not required to detail. He claims that said executrix received credit, to which she was not entitled, for debts paid by her for which no claims were filed or allowed; that she is not entitled to credit for advancements made by her personally and used in paying estate debts; that she borrowed money on her personal note and afterward paid her own personal debt with

estate funds; that she failed to file vouchers in support of her payments and such vouchers as were filed are defective; that she failed to list the assets at their true value; that appellant, as the holder of an allowed claim, is as much entitled to payment in full as other holders of allowed claims of equal rank which have been paid in full; that no settlement of the account should be approved which would prevent him from sharing, at least *pro rata*, with the holders of other properly allowed claims of equal rank; that the family allowance should not be allowed; that said executrix attempted without authority to carry on the business of decedent, etc.

█ A referee was appointed by the court to examine thoroughly the accounts of said executrix and to take evidence and determine the merits of appellant's claims. He found the facts to be substantially as hereinabove set forth, and in addition he made findings which are, in our opinion, amply supported by the evidence, and which resolve in favor of said executrix every contention made by appellant with respect to irregularities in said account. An order was thereafter entered confirming the report and findings of said referee and settling the account, from which order appellant prosecutes this appeal.

Said referee, in addition to the facts hereinabove set forth, found that said account contained a just and full statement of all the moneys received and disbursed by said executrix and that each and all of the facts therein stated were true; that all of the items of expenditure were supported by proper vouchers; that while certain of said vouchers had been mislaid, and by reason of lapse of time it was impossible to obtain duplicates thereof, yet canceled checks evidencing payment were produced and filed by said executrix in lieu of such misplaced vouchers; "that each and all of the items set forth in said account as expenditures are either proper items of expenditure incurred in the operation of said estate, or are the debts of the decedent paid by the executrix; that each and all of the items of indebtedness so paid were paid in good faith and for the best interests of the estate, and were a legal charge against said estate; that each and all of the disbursements set forth in said account were paid prior to July of 1919"; that the estate was at the time said payments were made and is now solvent; that appellant negligently failed to institute his aforesaid action

*ex delicto* until more than two years after the death of decedent and more than two years after the issuance of letters testamentary to said executrix, and more than one year after the expiration of the time within which claims might have been filed against the estate, and that said executrix was justified in making the payments of the indebtedness of said deceased which were made by her and had no knowledge or means of knowledge that appellant had or claimed to have an action *ex delicto* against said estate. The findings likewise dispose of the specific items objected to by appellant. Said findings, and the order, charge said executrix with having on hand property of the appraised value of $13,989.80, as against which there are outstanding the following valid and allowed claims: Preferred claims of said executrix for $15,357.32, covering her personal advancements, and $21,066 for family allowance; preferred charges against the remaining *corpus* of said estate of $650 for services of the referee, and $227.50 for court reporters' fees; claim of appellant for $10,060 upon his aforesaid judgment.

We are not here required to decree a preference between said allowed claims outstanding against the estate. That matter may be determined at the time of hearing and final settlement. In other words, if we approve the action of the trial court in settling the account the question of proper application of the assets of $13,989.80 upon said indebtedness will receive attention at the time the final account of said executrix comes before the court.

We hold, as above stated, that the findings correctly state the facts shown by the evidence and dispose of the various irregularities charged in the account; therefore the settlement of said account as a whole has our approval. But two matters require further discussion, to wit: (1) In confirming payment of certain debts, without claim filed, by virtue of section 1632 of the Code of Civil Procedure, a requirement of which is that an estate be solvent, did the court give proper weight to the effect of appellant's right, which existed but was unasserted at the time said payments were made, to file an *ex delicto* action against said estate? and (2) Did the court err in allowing respondent's claim for family allowance, taking into consideration her early remarriage and the fact that she had minor children?

■ Section 1632 of the Code of Civil Procedure provides that "If it appears by the oath to the account and is proven by competent evidence, to the satisfaction of the court, that a voucher for any disbursement . . . has been lost . . . and that it is impossible to obtain a duplicate thereof and that such item or items were paid in good faith and for the best interests of the estate, and such item or items were legal charges against said estate, then the executor or administrator shall be allowed such item or items." Here the evidence shows that the vouchers were delivered into the custody of the clerk of the court and thereafter lost or mislaid without knowledge or fault on the part of said executrix. Under the above section the court properly exercised its discretion in allowing such items as it found to be legal charges against the estate and paid in good faith.

■ As to payment of estate debts without affidavit and allowance, said section 1632 further provides that "if, upon such settlement of accounts, . . . it shall be proven by competent evidence to the satisfaction of the court that such debts were justly due, were paid in good faith, that the amount paid was the true amount of such indebtedness over and above all payments or setoffs, and that the estate is solvent, it shall be the duty of the said court to allow the said sums so paid in the settlement of said accounts." The referee found, as above stated, that the disbursements, without claim filed, made by said executrix, fulfilled all the requirements of the above provision; that they were all made prior to July, 1919; that the estate was then solvent, and allowed them in the settlement of the account.

■ But appellant contends, even though at that time he had abandoned his claim and had not yet instituted his *ex delicto* action, yet said executrix should have taken into consideration his latent rights with a possibility of their ripening into a judgment, and, including the possible amount of said judgment as a part of the indebtedness of said estate, should have realized that it would render the estate insolvent and necessitate a *pro rata* distribution of assets to creditors. The mere statement of the contention reveals that it would be inequitable and unjust to uphold it. Said executrix, knowing that she was the sole legatee, acted in good faith in endeavoring to close the estate by clearing up all the indebtedness at a time when, to the best of her knowledge and

in fact, it was solvent and apparently could not but remain so, as the period within which creditors could present claims had expired and appellant's claim had been abandoned. She should, therefore, not be made to suffer by reason of the circumstances which forced the later insolvency, nor can said insolvency be held to retroactively invalidate said payments. Appellant alone is at fault in having negligently allowed his rights to sleep, and hence equity will not come to his aid.

A proceeding of this character is primarily of an equitable nature (*In re Clos*, 110 Cal. 494 [42 Pac. 971]; *Estate of Freud*, 131 Cal. 667, 671 [82 Am. St. Rep. 407, 63 Pac. 1080]; *Estate of Bell*, 168 Cal. 253 [141 Pac. 1179]), and the court had power to protect said executrix in her endeavor to carry on the business of decedent (*Estate of Freud, supra,* and cases therein cited) and conserve said estate and to allow said executrix reimbursement for her personal advancements in this behalf (*Estate of Carpenter*, 146 Cal. 661 [80 Pac. 1072]; *In re Clos, supra*).

That the court had power to award a family allowance to said executrix is unquestioned (sec. 1464 et seq., Code Civ. Proc.; *In re Walkerley*, 77 Cal. 642 [20 Pac. 150]; *Estate of Treat*, 162 Cal. 250 [121 Pac. 1003]), and in view of the findings and evidence that said estate was solvent, the duration of said allowance was not limited to one year under the provisions of section 1466 of the Code of Civil Procedure.

Furthermore, as said executrix still had minor children to support, her remarriage was no bar to the continuance of an allowance for their benefit. This is clearly implied in the cases relied upon by appellant. As said in *In re Still*, 117 Cal. 509, 514 [49 Pac. 463, 465]: "No doubt the court could have continued the allowance, if necessary for the benefit of the children, but when she ceased to be the widow of Still she could not claim as a perquisite for herself, or for her new husband, a family allowance from the estate of her former spouse. (*Estate of Hamilton*, 66 Cal. 576 [6 Pac. 493].)" Appellant is, therefore, in no position to urge the disallowance of the order granting the allowance. At the time said order was made he might, it is true, have opportunely undertaken to secure a modification of the award (*Estate of Boselly*, 179 Cal. 218 [176 Pac. 45]; *Estate of Nelson*, 167 Cal. 321 [139 Pac. 692]), but this he

failed to do, and as such modification cannot operate retroactively (*Estate of Nelson, supra*), it is now too late for him to urge his objections to the amount thereof.

However, as above stated, the decree entered herein reserves for determination by the court upon the settlement of the final account of said executrix the respective rights of said executrix and appellant to the payment of their respective claims, and further consideration of said award for family allowance is therefore really immaterial to the determination of this proceeding.

The order is affirmed.

Richards, J., Shenk, J., Curtis, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.