[No. G012658. Fourth Dist., Div. Three. Oct. 30, 1992.]

DANA VARNEY, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
FRANCES ANTOLIN, as Executrix, etc., Real Party in Interest.

Counsel

Westover & Matthews, Alyssa C. Westover and Robert Matthews for Petitioner.

No appearance for Respondent.

Gerard J. Fane and Marjorie G. Fuller for Real Party in Interest.

Opinion

**MOORE, Acting P. J.**—The superior court entered an order under Probate Code section 21320[1] finding petitioner Dana Varney's proposed creditor's claim (§ 9000 et seq.) and petition for the conveyance of real property and the transfer of corporate stock (§ 9860 et seq.) would violate the forfeiture clause of a decedent's will. Petitioner sought a writ of mandate in this court to vacate the superior court's order and requested a stay of the expiration of time for filing the creditor's claim. We granted a stay and issued an alternative writ. The questions presented are whether petitioner has an adequate legal remedy, whether we have jurisdiction to toll the expiration of the time for filing a creditor's claim and whether the lower court erred by finding petitioner's proposed actions would constitute contests under the decedent's will.

FACTS

Paul Magdaleno died November 7, 1991. At his death, Magdaleno held title to a home in Irvine and stock in an incorporated business named the Golden Fire Restaurant.

Magdaleno's will, dated March 7, 1977, was admitted to probate. The will bequeaths a percentage of Magdaleno's estate to his parents, two sisters, a brother, and his nephews and nieces. The will also leaves 10 percent of the estate to petitioner.

In addition, it contains the following article: "*Third*: I have intentionally omitted making provisions for all of my heirs who are not specifically mentioned herein, and I generally and specifically disinherit each, any and all persons whomsoever claiming to be or who may lawfully be determined [*sic*] to be my heirs at law, except such as are mentioned in this Will, and if any such persons or such heirs or any devisees or legatees, or beneficiaries

---

[1]All statutory references are to the Probate Code unless otherwise specified.

under this Will shall contest in any Court any of the provisions of this instrument, or shall not defend or assist in good faith in the defense of any and all such contests, then each and all of such persons shall not be entitled to any devises, legacies, or benefits under this Will or any codicil hereto, and any and all devises, legacies and portions of the estate shall be paid, distributed and pass as though such person had died without issue of his or her body before my death."

On February 7, 1992, real party in interest Frances Antolin was issued letters testamentary in the probate action concerning Magdaleno's estate. On April 6, Petitioner filed his request for a declaration under section 21320[2] concerning the creditor's claim and petition. Copies of the proposed claim and petition were attached to his request.

The petition alleges as follows: Petitioner and Magdaleno met in 1976. In 1977, the two entered into an oral agreement to co-own a new restaurant. Under the agreement petitioner promised to provide services to the new business at a substantially reduced rate of pay for the remainder of Magdaleno's life, and Magdaleno promised he would transfer title of his Irvine property and his entire interest in the restaurant to petitioner when he died. Petitioner fully performed his part of the agreement. However, Magdaleno failed to leave his home and restaurant corporate stock to petitioner. The proposed petition seeks specific performance of the agreement. The creditor's claim seeks $504,225 as the reasonable value of petitioner's services to the restaurant and Magdaleno's other business interests less the pay previously received by him.

A hearing on petitioner's request was held May 19. The court ruled both the proposed creditor's claim and petition would violate the will's forfeiture clause. A formal order to this effect was entered May 29. On June 5, petitioner filed this proceeding and requested an immediate stay on the expiration of time to file the creditor's claim which would have otherwise expired June 8.[3]

---

[2]Section 21320, subdivision (a) states: "If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination whether a particular motion, petition, or other act by the beneficiary would be a contest within the terms of the no contest clause."

[3]The filing period actually expired June 7. However, since the last day fell on a Sunday, petitioner had until the end of the next business day to file the claim. (§ 1000; Code Civ. Proc., §§ 12, 12a.)

## DISCUSSION

### I. *Absence of an Adequate Legal Remedy*

The first question is whether petitioner has an adequate remedy at law. (Code Civ. Proc., § 1086.) Real party insists an adequate legal remedy exists because an order under section 21320 is directly appealable. Petitioner contends the order is not appealable, and even if it is, the delay inherent in appeals would extend beyond the time required to file a creditor's claim and would hamper the timely and orderly administration of the estate.

Section 7240 lists the probate orders from which an appeal can be taken. It does not include an order pursuant to section 21320. Generally, rulings in probate proceedings are not appealable unless expressly made so by statute. (*Estate of Schechtman* (1955) 45 Cal.2d 50, 54 [286 P.2d 345]; *Estate of Weber* (1991) 229 Cal.App.3d 22, 24 [280 Cal.Rptr. 22].) The primary reason for this rule is to prevent delay in the distribution of estates. (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 781 [136 Cal.Rptr. 821].)

We need not decide whether an order under section 21320 is appealable. In issuing the alternative writ, we impliedly determined an appeal was not an adequate remedy in this case. (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].) This case presents an important issue concerning the ability of an appellate court to toll the time for filing a creditor's claim to permit meaningful review of a trial court's interpretation of a forfeiture clause. (*Freedman* v. *Superior Court* (1989) 214 Cal.App.3d 734, 735-736 [263 Cal.Rptr. 1]; *Anderson* v. *Superior Court* (1989) 213 Cal.App.3d 1321, 1328 [262 Cal.Rptr. 405]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 118, pp. 753-757.) Thus, even if the superior court's order is appealable, given the short filing period requirements in probate matters, the need for timely and orderly administration of estates, and the importance of the issues presented in this case, we conclude an appeal would not be an adequate legal remedy.

### II. *Jurisdiction to Toll Expiration of the Creditor's Claim Filing Period*

Petitioner's proposed creditor's claim seeks recovery for the reasonable value of the services rendered to Magdaleno. Thus, it constitutes an indebtedness for which a claim must be filed. (§ 9000, subd. (a)(1); *Murdock* v. *Swanson* (1948) 85 Cal.App.2d 380, 388 [193 P.2d 81].) Except in limited circumstances not relevant here, a creditor's claim must be filed within four months after letters are issued to the estate's representative. (§ 9100, subd.

(a)(1).) Failure to comply with this time requirement bars the claim. (§ 9002, subd. (b).) ■ Generally, the time requirement cannot be waived either by the estate's personal representative or the probate court. (*Nathanson v. Superior Court* (1974) 12 Cal.3d 355, 361-362, 369 [115 Cal.Rptr. 783, 525 P.2d 687]; *Estate of Erwin* (1953) 117 Cal.App.2d 203, 204-205 [255 P.2d 97]. See also *Estate of Sturm* (1988) 201 Cal.App.3d 14, 17-18 [246 Cal.Rptr. 852].)

Before the time for filing petitioner's claim expired, we granted a stay. ■ The question presented is whether we had the authority to issue the stay and toll expiration of the time for filing a creditor's claim.

Petitioner argues Code of Civil Procedure sections 356 and 916, subdivision (a) give us authority to grant a stay. In addition, he relies on equitable principles to support our ruling. Real party contends the timely filing of a creditor's claim is mandatory and cannot be extended.

The reliance on sections 356 and 916 of the Code of Civil Procedure is without merit. Section 356 provides "When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." Petitioner notes this statute has been construed to apply where "a plaintiff is legally prevented from taking action to protect his rights." (*Hoover v. Galbraith* (1972) 7 Cal.3d 519, 526 [102 Cal.Rptr. 733, 498 P.2d 981].) While section 9100 is in the nature of a statute of limitations (*Eken v. Bosworth* (1977) 72 Cal.App.3d 248, 252, fn. 6 [139 Cal.Rptr. 834]; *Hays v. Bank of America* (1945) 71 Cal.App.2d 301, 306 [162 P.2d 679]), nothing in the present case legally prevented petitioner from filing his creditor's claim. Our stay order was expressly requested by him.

Code of Civil Procedure section 916, subdivision (a) states that, with certain exceptions, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order . . . ." But the statute only applies to appeals. This case involves an original proceeding for extraordinary relief, not an appeal. Code of Civil Procedure section 1110 does not alter this conclusion. It merely provides that where a party has brought a writ proceeding *in the superior court*, the statutes relating to new trials and appeals generally apply to it. Here, that is not the case.

But in some limited circumstances, the time requirement for filing a creditor's claim has been waived or the estate estopped from relying on it. In

*Satterfield* v. *Garmire* (1967) 65 Cal.2d 638 [56 Cal.Rptr. 102, 422 P.2d 990], the complaint alleged plaintiffs filed suit and the parties began settlement negotiations well before the claim period expired, it was conceded decedent caused the accident and the only dispute concerned the amount of the claim, the original answer did not assert the failure to file a claim as a defense, the decedent's insurance was sufficient to cover the claim and no substantial benefit would be relinquished by his heirs. The Supreme Court reversed a dismissal of the action, holding: "[G]enerally it is not within the authority of an executor or administrator to waive formal presentation of a claim. But we conclude he may do so where this congeries of circumstances exists prior to the expiration of the period for filing a claim: he has knowledge of the claim and concedes its merit save only as to the specific sum; the estate is protected by insurance coverage exceeding the amount of the claim; and waiver results in relinquishment of no substantial benefit of or causes no detriment to the heirs or legatees." (*Id.* at p. 645.)[4]

In *Katz* v. *A. J. Ruhlman & Co.* (1945) 69 Cal.App.2d 541 [159 P.2d 426], defendant borrowed money from a woman evidenced by a promissory note. The woman died and her estate's first representative sought to collect on the note. The parties agreed that a sum then due from the decedent to defendant would be accepted as a partial offset, the estate would declare only the difference between the amounts and that defendant need not file a claim. After the filing period expired, a subsequent estate representative repudiated the agreement and sued to collect the entire amount due on the note. The Court of Appeal reversed a judgment for the estate, concluding it was estopped to repudiate the original executor's mistaken or fraudulent advice. (*Id.* at pp. 545-546.)

More recently, in *Estate of Sturm, supra,* 201 Cal.App.3d 14, the probate court surcharged an administratrix for debts she satisfied after the claim filing period expired and for which no creditor's claims had been filed. The administratrix argued she recognized the debts by making initial payments on them during the filing period, and the subsequent payments were proper under former section 929.[5] The Court of Appeal, although rejecting the administratrix's argument that section 929 created an exception to the time requirements for creditor's claims, reversed. "[W]here . . . a debt of the estate has been recognized by the representative by a partial payment within the four-month period, a different situation exists. If the balance due meets

---

[4]Subsequently, the Legislature enacted former section 721 providing a claim was not required to maintain a civil action for an obligation of the decedent to the extent it is covered by liability insurance. (Stats. 1971, ch. 1638, § 4, pp. 3533-3534.) The matter is now covered by sections 550 et seq. and 9390.

[5]Former section 929 related to the payment of certain debts without the filing of a verified claim. It is now covered by section 11005.

the requirements of section 929, the court pursuant to the section should have the authority to approve the payments. This exception does not defeat the objects of the statutory scheme . . . . The partial payment of the debt verifies the existence and knowledge of the debt within the time limit set by section [9002], and justified payment of the balance, if justly due and paid in good faith." (201 Cal.App.3d at p. 18.)

An analogous situation existed under former Code of Civil Procedure section 583 which required a case be dismissed if not brought to trial within five years. (See now Code Civ. Proc., § 583.310 et seq.) Under the original statute, the only exception allowed was a written stipulation between the parties to extend the time for trial. (*Sacramento T. Co.* v. *California Reclam. Co.* (1928) 205 Cal. 42, 44.) Nonetheless, "despite the mandatory language of the statute, *implied exceptions* . . . [were] recognized" if bringing the case to trial within the statutory mandated period was impossible, impracticable or futile. (*Christin* v. *Superior Court* (1937) 9 Cal.2d 526, 530, 533. See also *Estate of Morrison* (1932) 125 Cal.App. 504, 510.)

This case presents a situation where a limited exception to the general requirement that a claim must be filed within section 9100's time requirements is appropriate. During the claim filing period petitioner sought a declaration of whether the proposed creditor's claim would violate the will's no-contest clause. He attached a copy of both the proposed claim and the proposed section 9860 petition to the request. Those documents specified the nature of the claim and the amount sought. Petitioner filed this petition *before* the claim period expired and our stay was issued *before* its expiration as well. Given the short time period for submitting creditor's claims, appellate review of whether the probate court erred in concluding the filing of a claim would violate a forfeiture clause would not be possible nor practical. Unless an appellate court can stay the expiration of the time for filing a creditor's claim, there could never be meaningful review of a trial court's decision under section 21320.

■ The time restriction on filing creditor's claims is intended to ensure the representative of an estate is notified of all claims within a reasonable period so that the estate can be expeditiously settled and distributed to the legatees or heirs. (*Nathanson* v. *Superior Court, supra*, 12 Cal.3d at p. 365.) The exception we recognize here will satisfy that objective. ■ While no case has previously recognized an exception under these circumstances, " 'Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention.' [Citation.]" (*Satterfield* v. *Garmire, supra*, 65 Cal.2d at p. 645.)

*Nathanson* v. *Superior Court, supra*, 12 Cal.3d 355 is distinguishable. There the decedent's former wife filed a petition for a family allowance with the decedent's estate. The petition stated the former wife "anticipated" filing creditor's claims for unpaid child support and the decedent's failure to maintain a life insurance policy in favor of herself and their child as required by a divorce decree. After the time for filing a creditor's claim had expired, petitioner submitted her claim and a petition requesting permission to file a late claim. The superior court denied relief, but the Court of Appeal issued a peremptory writ directing petitioner be allowed to file an amended claim.

The Supreme Court reversed the appellate court's ruling and upheld the trial court. It held a probate court has no authority to allow the filing of a late claim, and the mere fact the estate has received notice an indebtedness exists is insufficient to permit an amendment after the time for filing a claim expires. (12 Cal.3d at pp. 368-370.)

Here, by contrast, petitioner timely sought a declaration of whether his creditor's claim would violate the will's forfeiture provision, and after receiving an adverse response from the probate court sought both a review of that ruling and a stay *before* the time for filing a claim expired. Thus, this case does not involve an attempt to file a late claim or amend an invalid claim after the time for filing it has expired.

Accordingly, we conclude that under the circumstances presented here we have the authority to toll the expiration of the time for filing petitioner's proposed creditor's claim pending resolution of this writ proceeding.

### III. *The No-contest Clause*

Petitioner contends his proposed claim and petition do not violate the will's forfeiture clause because they are based on an oral contract and thus are independent of the will. In addition, he also argues the filing of an action on the creditor's claim, in the event it is rejected, would not violate the will's no-contest provision. Real party contends the creditor's claim and petition would be contests because, while they do not directly attack any part of Magdaleno's will, their effect is to thwart his wishes as expressed in it.

A contest is defined by the Probate Code as "an attack in a proceeding on an instrument or on a provision in an instrument." (§ 21300, subd. (a).) A no-contest clause is enforceable, but will be strictly construed. (§§ 21303, 21304; *Scharlin* v. *Superior Court* (1992) 9 Cal.App.4th 162, 168-169 [11 Cal.Rptr.2d 448].) It has long been the rule in the State of California that no-contest clauses in a will are not to be extended "beyond what was

plainly the testator's intent." (*Estate of Bergland* (1919) 180 Cal. 629, 633 [182 P. 277, 5 A.L.R. 1363].) "[S]uch clauses must be strictly construed [citation], and no wider scope is to be given to their language than is plainly required [citations]. Only where an act comes strictly within the express terms of the forfeiture clause may a breach thereof be declared. [Citations.]" (*Estate of Basore* (1971) 19 Cal.App.3d 623, 630 [96 Cal.Rptr. 874].)

■ But "[t]he interpretation of a written instrument, including a will . . . presents a question of law unless interpretation turns on the competence or credibility of extrinsic evidence or a conflict therein. Accordingly, a reviewing court is not bound by the lower court's interpretation but must independently construe the instrument at issue. [Citations.]" (*Poag* v. *Winston* (1987) 195 Cal.App.3d 1161, 1173 [241 Cal.Rptr. 330]. See also *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Since there was no extrinsic evidence presented in this case, we interpret the forfeiture clause de novo.

### A. *The Petition to Convey Property and Transfer Stock*

■ After reviewing the cases cited by the parties in support of their respective positions, we conclude the proposed petition under section 9860 would not violate the forfeiture clause of Magdaleno's will.

Real party cites *Estate of Friedman* (1979) 100 Cal.App.3d 810 [161 Cal.Rptr. 311]. There, the testatrix died after simultaneously executing a marital trust, family trust and will. Friedman, the testatrix's second husband, was cotrustee of the marital trust and upon her death became its sole beneficiary. Appellant, the testatrix's daughter by a prior marriage, and the testatrix's grandchildren were the beneficiaries of the family trust. The will left a small bequest to appellant, transferred some property to the marital trust and left the residue of the estate to the family trust. However, all estate and inheritance taxes were to be paid from the residue, and if it was insufficient, the corpus of the family trust. The will also contained a no-contest clause. Appellant sought instruction from the probate court on whether a complaint seeking to impose a constructive trust on the property left to Friedman would violate the will's no contest clause.

The trial court held it would and the Court of Appeal agreed: "Appellant's proposed complaint, if filed, would result in the thwarting of [testatrix's] wishes as expressed in her will. [The testatrix] bequeathed appellant $50,000 and designated her as as [*sic*] the life income beneficiary of the family trust; she named Friedman as the remainder beneficiary of the marital trust, and gave him therein a power of appointment over the trust estate. Appellant's

proposed complaint is designed to frustrate this testamentary plan by securing for her a sum equivalent to the value of [the testatrix's] estate allegedly appropriated by Friedman, by making him the constructive trustee of the estate for appellant's benefit, and by restraining him from exercising the power of appointment given him by [the testatrix] in the marital trust. The no-contest clause herein states that a beneficiary may not, without forfeiting the interest given him under the will, 'contest this Will or attack or seek to impair or invalidate any of its provisions.' The filing of appellant's proposed complaint would come squarely within such conduct, and thus would constitute a violation of the no-contest clause." (*Estate of Friedman, supra,* 100 Cal.App.3d at p. 818.)

Another case real party relies on is *Estate of Kazian* (1976) 59 Cal.App.3d 797 [130 Cal.Rptr. 908]. There, the decedent and Kazian, her second husband, agreed that all property owned or later acquired by either one would remain his or her separate property. She died leaving a will declaring all assets in her name were her separate property, bequeathing a small sum to Kazian, leaving the bulk of her estate to her children and grandchildren, and stating that if any " 'beneficiary under this Will, . . . shall contest it, or any of its parts or provisions' " he or she would receive only $1. (*Id.* at p. 800.) Kazian filed an action unsuccessfully seeking to declare the estate's assets were community property, entitling him to one-half. The probate court found the lawsuit was a contest.

The Court of Appeal affirmed. "Decedent's clear intent was to leave Kazian a relatively small percentage of the estate and to lavish her bounty on her children and grandchildren, the offspring of her first marriage. [¶] The object of Kazian's action was totally contrary to this intent. He sought a judgment, the effect of which would have been to chop the estate in half. He was, of course, entitled to bring his separate action, but '"when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions, the courts, rightly hold that no legatee, without compliance with that condition, shall receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes." ' [Citations.]" (*Estate of Kazian, supra,* 59 Cal.App.3d at pp. 802-803.)

On the other hand, in *Estate of Black* (1984) 160 Cal.App.3d 582 [206 Cal.Rptr. 663], Graham and Black cohabited for 18 years before Black died. Black's will declared, " 'It is my intention to dispose of all my property, . . . which I have the right to dispose of by will, . . .' " (*Id.* at p. 591.) He left the couple's residence and a small sum in trust to Graham, and the bulk of his estate to his adult children from a prior marriage. The will also provided, " 'If any beneficiary . . . in any manner, directly or indirectly, contests or attacks this will or any of its provisions, any share or interest . . . given to that . . . beneficiary . . . is revoked. . . .' " (*Id.* at p. 586.)

Graham sought a determination of whether filing an action based on *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106] (a party to a nonmarital living relationship may acquire property rights based on either an express or implied-in-fact agreement and employ equitable remedies to enforce them) would violate the forfeiture clause of Black's will. The trial court concluded it would, but on appeal that ruling was reversed.

The appellate court held Graham's claim was analogous to prior cases finding "claims to property based on a source of right independent of the will . . . not to be 'contests' under a variety of forfeiture clauses. [Citations.]" (160 Cal.App.3d at p. 590.) The court also noted Black's will declared an intent to dispose of only that property he had " 'the right to dispose of by will . . . .' " (*Id.* at p. 591.) "Graham contends that under the rationale of *Marvin*, the decedent did not have the right and did not intend to dispose by will of that property which represents her partnership interest based on the lengthy unmarried relationship, and which she was entitled to claim regardless of the will. We find this interpretation persuasive. . . ." (*Id.* at p. 591.)

In *Estate of Watson* (1986) 177 Cal.App.3d 569 [223 Cal.Rptr. 14], a father died leaving a small bequest to his two daughters and the rest of his estate to the daughters' stepmother. The will revoked any bequest to a beneficiary " 'who at any time contests or seeks to impair or invalidate any of its provisions or joins with anyone attempting to do any such things, . . .' " (*Id.* at p. 571.) Shortly thereafter, the stepmother died. Her will left nothing to the daughters. They sued the beneficiaries of their stepmother's estate for breach of contract, constructive trust and injunctive relief, alleging that while their father and stepmother were both alive they orally agreed the father would leave his property to the stepmother, except for a small bequest to his daughters, and the stepmother would bequeath the property to the daughters when she died. The stepmother's beneficiaries cross-complained, alleging the daughters' lawsuit violated the no-contest clause of their father's will.

The trial court's judgment against the daughters was reversed. Noting the daughters' lawsuit did not challenge the provisions or the disposition of their father's will, the appellate court held: "Here, the daughters do not seek a distribution based on the terms of the will itself or to establish that the will is any way invalid, e.g., due to fraud or undue influence [citation] but rather seek enforcement of a separate and distinct oral agreement. As such, their creditors' claim and complaint are based on a 'source of right independent of the will.' [Citations.] [¶] Nor does it appear the daughters' filing of the creditors' claim and complaint to enforce the oral agreement is 'designed to

result in the thwarting of the testator's wishes as expressed in his will.' [Citation.]" (*Estate of Watson, supra,* 177 Cal.App.3d at p. 573.)

Two decisions from the Fifth District involving the same estate are also relevant. In *Estate of Miller* (1963) 212 Cal.App.2d 284 [27 Cal.Rptr. 909], a mother died leaving her property to her three daughters. Her will contained a forfeiture clause disinheriting anyone who " 'shall contest in any court any of the provisions of this instrument, or shall not defend or assist in good faith in the defense of any and all such contests. . . .' " (*Id.* at p. 287.) Two daughters each received an outright bequest of one-third of the estate. However, the mother placed the third daughter's share in a trust with directions that she receive the income for life and left the remainder to the grandchildren. The third daughter sued to impose a constructive trust against her sisters and the executor of her mother's estate, alleging their parents had orally agreed to leave their property to the three daughters equally and that the mother breached the agreement by leaving her only a life interest in trust.

The appellate court held the separate action did not violate the forfeiture clause of the mother's will. Quoting at length from the Supreme Court's decision in *Ludwicki v. Guerin* (1961) 57 Cal.2d 127 [17 Cal.Rptr. 823, 367 P.2d 415], the appellate court noted, " '*The action to impose the trust does not interfere with the proceedings in probate. It does not set forth a claim against the estate, or against the executor, or against his right to possession for the purposes of administration.* The action is in effect a suit between a claimant under the contract and claimants under the will . . . as to who is entitled to all or part of the estate, and it does not purport to interfere with the administration by the executor, who, with respect to the proceeding, is in the position of a stakeholder. [Citation.] The executor, however, may properly be made a party defendant, as was done in this case, for the purpose of restraining him from distributing the property without regard for plaintiff's interests. [Citation.]' . . . ." (*Estate of Miller, supra,* 212 Cal.App.2d at pp. 293-294.) The court also narrowly construed the forfeiture clause to refer to only will contests. (*Id.* at pp. 296-297.)

In a second appeal, a contingent beneficiary claimed the third daughter violated the forfeiture clause by filing the separate action, attempting to remove the executor and attacking the amount of discretion assumed by the trustee under the trust. The court concluded the forfeiture clause was not violated, again relying in part on a narrow construction of the term contest: "[T]he key word used by the testatrix is 'contest.' Was the trial court wrong in holding that the testatrix meant to employ the word 'contest' in the sense so clearly defined in the appropriate code sections? The will was drafted by . . . an attorney at law . . . , and it is to be presumed that he used the word

with its technical meaning [citation]. . . . [¶] In a probate proceeding such as this, lawyers and judges would normally read the word 'contest' as it is employed in the probate code in connection with wills [citation]. Actually, the word 'contest' in somewhat similar situations has usually been given that meaning. [Citation.]" (*Estate of Miller* (1964) 230 Cal.App.2d 888, 901 [41 Cal.Rptr. 410].)

The forfeiture clause of Magdaleno's will is narrowly drawn. It refers to only contests of "any of the provisions of this instrument" or a failure to defend against or assist in the defense against "any and all such contests." The *Miller* cases held similar language referred only to will contests. "Technical words in a will are to be considered as having been used in their technical sense unless (1) the context clearly indicates a contrary intention or (2) it satisfactorily appears that the will was drawn solely by the testator and that the testator was unacquainted with the technical sense." (§ 6162.) Magdaleno's will was prepared by an attorney. There is no indication the word "contests" was used other than in its technical sense.

But even if we did not construe this forfeiture clause so narrowly, it would not change the result. Magdaleno's will leaves a specified percentage of his estate to several persons. Petitioner's proposed action seeks recovery of specific property under an alleged oral contract. Unlike *Friedman* and *Kazian*, petitioner is not seeking to impose a constructive trust on specific bequests left to other beneficiaries, nor is he attempting to achieve a result contrary to Magdaleno's will or a prior agreement between Magdaleno and himself. Rather, he seeks to enforce a contract that is independent of the will. A successful conclusion to petitioner's section 9860 petition would not affect the other beneficiaries' right to recover the percentage of the estate left to them by the will.

We find the section 9860 petition does not contest the provisions of Magdaleno's will.

### B. *The Creditor's Claim*

The mere filing of a creditor's claim will not violate Magdaleno's will. In *Estate of Madansky* (1938) 29 Cal.App.2d 685 [85 P.2d 576], the decedent's son, a beneficiary under her will, filed a creditor's claim that was later disallowed. The decedent's will provided for the forfeiture of a beneficiary's interest if he or she " 'should contest this . . . will or interfere in any way with the administration and the carrying out of this . . . will . . . , or bring suit, action or proceeding against my estate or my executor; or in case any suit, action or proceeding should be made necessary by my executor to

carry out this . . . will . . . .' " (*Id.* at p. 686.) The probate court held the son had not violated the forfeiture provision and the Court of Appeal affirmed: "The filing of a claim by a beneficiary against an estate, which claim is disallowed, is not equivalent to contesting the will of decedent, failing to abide by its terms, or interfering with the administration of the will. [Citation.]" (*Ibid.*)

Magdaleno's will provides for forfeiture only where a beneficiary "shall contest in any Court any of the provisions of this instrument, or shall not defend or assist in good faith in the defense of any and all such contests . . . ." Thus, his will's forfeiture clause is narrower than the one considered in *Madansky*.

Petitioner also contends that if his creditor's claim is denied, an action for the reasonable value of his services would not violate the no-contest clause. We agree. An action to enforce a claim for money does not necessarily constitute a contest under a forfeiture provision. (*Estate of Miller, supra,* 230 Cal.App.2d at p. 902; *Estate of Dow* (1957) 149 Cal.App.2d 47, 54-55 [308 P.2d 475].)

*In re Kitchen* (1923) 192 Cal. 384 [220 P. 301, 30 A.L.R. 1008] is distinguishable. There, a legatee brought a claim against the estate asserting that while the decedent was alive the legatee agreed to remain in the decedent's home and perform the duties of a daughter based on the decedent's oral promise to adequately compensate her by will. The will contained a forfeiture clause disinheriting anyone who " 'shall commence any suit in any court whatsoever, or by any ways or means, sue and disturb, or cause to be sued and disturbed, my executor herein named, or any other person or persons whatsoever, to whom anything is by me given in this my will, from the recovering, quiet enjoying and possessing, of what is by me herein given as aforesaid, and in such manner as is therein mentioned . . . .' " (*Id.* at p. 387.)

The trial court found the legatee's claim violated the forfeiture clause. The Supreme Court affirmed. "We see no escape from the conclusion that the testatrix by the use of the language employed, which is much broader than the usual contest clauses in wills, intended to penalize the commencement of any suit whatever. And the appellant having made her choice of instituting and prosecuting a suit for the collection of the alleged debt against the estate cannot escape the palpable fact that there was a 'suit commenced' by her." (*In re Kitchen, supra,* 192 Cal. at p. 389.)

*Kitchen* involved a much broader forfeiture clause that covered the commencement of lawsuits and other actions that would disturb either the

executor or a beneficiary under the will. (192 Cal. at p. 387.) Magdaleno's will only bars contests of provisions of the will itself. Petitioner's quantum meruit claim is for services he performed pursuant to an alleged oral agreement between him and Magdaleno. The agreement was unquestionably independent of the will. Accordingly, we conclude that in the event petitioner's creditor's claim is denied and he chooses to bring an action for the reasonable value of his services, that action would not violate the no contest clause of Magdaleno's will.

## DISPOSITION

The alternative writ is discharged. Let a writ of mandate issue directing the superior court to vacate its ruling and enter a new order declaring that the petition under section 9860, the creditor's claim, or an action for the reasonable value of petitioner's services would not violate the will's forfeiture clause. Petitioner shall have five court days to file a creditor's claim after this court's remittitur is issued. In all other respects the petition is denied.

Wallin, J., and Sonenshine, J., concurred.